[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 14, 2011
JOHN LEY
CLERK

No. 10-12916

_____

D.C. Docket No. 1:09-cr-00257-WS-N-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID CLIFTON FULFORD,
a.k.a. Residence at 5119 Glenshire Drive, Loxley, Alabama,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(November 14, 2011)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and SANDS,* District
Judge.

CARNES, Circuit Judge:

_____

*Honorable W. Louis Sands, United States District Judge for the Middle District of
Georgia, sitting by designation.

A defendant convicted of distribution of child pornography is subject to a 5-level enhancement under § 2G2.2(b)(3)(C) of the sentencing guidelines if the distribution was to a minor. The defendant in this case distributed child pornography to an unidentified person, not connected with law enforcement, who convinced him that she (or he) was a minor. The district court applied the distribution to a minor enhancement after concluding that the actual age of the recipient, which has never been determined in this case, does not matter so long as the defendant thought that the recipient was a minor. In doing so, the court extended the reasoning of some of our decisions involving fictitious minors created by law enforcement. Regardless of what we said in those other cases involving different facts and different guidelines provisions, we reach a different conclusion because the definition of "minor" in the application note to § 2G2.2 convinces us that here it is more than just the thought that counts.

## I.

David Fulford pleaded guilty to, and was convicted of, one count of knowingly possessing and attempting to possess images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and two counts of knowingly receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2). The presentence investigation report stated that Fulford entered into online "chat

2

rooms" with children and distributed child pornography to them. Based on that conduct, the PSR recommended a 5-level sentence enhancement for distribution of child pornography to a minor under U.S.S.G. § 2G2.2(b)(3)(C). Fulford objected to the enhancement, arguing that the government had not provided proof that the people he was chatting with and distributing pornography to were minors as that term is defined for that guideline.

At Fulford's sentence hearing, Wes Anthony, the lead agent in the investigation of the case, testified that a forensic examination of Fulford's computer revealed instant messages and the exchange of images with people Anthony inferred were minors and that Fulford had distributed some child pornography to those people. Agent Anthony admitted that the only two people that the government could identify who had received child pornographic images from Fulford turned out to be adult males posing as minor girls, and none of the people were law enforcement officers running a sting.

Even so, the government argued that the 5-level enhancement still applied because Fulford believed he was sending material to minors, and in their online conversations several of them seemingly held themselves out to be minors. Fulford objected to the enhancement on the ground that the government had not provided proof that any of those to whom he distributed the child pornography

3

actually were minors. After receiving additional briefing on the question, the district court held a second sentence hearing to consider it.

The government made two arguments. First, it argued that based on the chat logs and recovered images, the district court could find by a preponderance of the evidence that Fulford distributed child pornography to a minor with the user name "Dawn." Although Dawn was never located, she represented herself—or perhaps himself—to be a 13-year-old female. Second, the government argued that, regardless of Dawn's identity and actual age, Fulford thought she was a minor and intended to distribute child pornography to her, and that was enough to warrant application of the 5-level enhancement. While it acknowledged there was no controlling precedent on the issue, the government cited our decisions in United States v. Murrell, 368 F.3d 1283 (11th Cir. 2004), and United States v. Lebovitz, 401 F.3d 1263 (11th Cir. 2005), for the proposition that the relevant consideration was not the victim's true age but Fulford's intent.

On the issue at hand, Fulford emphasized that even if the evidence established that he had he transmitted child pornography over the internet, there was no proof that anyone who received it was actually a minor. He stressed that the only recipients who were positively identified were actually adult males. Turning to the government's second argument, Fulford argued that his intent was

4

not sufficient to justify the enhancement, pointing out that intent is not addressed in the language of the guidelines provision. He distinguished the decisions the government relied on because they all involved a law enforcement sting operation using a fictitious minor. In a nutshell, Fulford argued that the government had to prove that one or more of the people to whom he had sent child pornography were actually minors, and because the government had not done so the enhancement did not apply.

After considering the arguments, the district court found as a fact that Fulford had chatted over the internet with a person who said her name was Dawn and "who held herself out to be a 13-year-old female," and believing Dawn to be a minor, he had transmitted child pornography to her.[1] The district court did not make a finding, one way or the other, about whether Dawn was actually a minor. Instead, extending the reasoning in our <u>Murrell</u> and <u>Lebovitz</u> decisions, the court stated that it was "persuaded that that same kind of analysis and reasoning would apply in this case and should apply in this case." Accordingly, it overruled Fulford's objection and applied the 5-level enhancement under § 2G2.2(b)(3)(C), which resulted in an adjusted offense level of 37. Combined with his criminal

---

[1] The district court's factfindings as to the § 2G2.2(b)(3)(C) enhancement dealt only with the "individual who identified herself as Dawn." The government apparently dropped any reliance on the others to whom Fulford sent pornography.

history category of I the result was a guidelines range of 210–262 months.  The

court sentenced Fulford to 210 months imprisonment.

In this appeal of his sentence Fulford contends that the district court erred

when it applied the 5-level enhancement for distribution of child pornography to a

minor under § 2G2.2(b)(3)(C).[2]

## II.

We review de novo "the district court's legal interpretations of the

Sentencing Guidelines."  United States v. Zaldivar, 615 F.3d 1346, 1350 (11th Cir.

2010).  "To properly interpret the Sentencing Guidelines, we begin with the

language of the Guidelines, considering both the Guidelines and the commentary."

United States v. Panfil, 338 F.3d 1299, 1302 (11th Cir. 2003) (citation omitted).

"The language of the Sentencing Guidelines, like the language of a statute, must

be given its plain and ordinary meaning," United States v. Sutton, 302 F.3d 1226,

1227 (11th Cir. 2002), because "[a]s with Congress, we presume that the

Sentencing Commission said what it meant and meant what it said," United States

v. Shannon, 631 F.3d 1187, 1190 (11th Cir. 2011) (quotation marks omitted).  The

---

[2]  The government argues that any error is harmless because Fulford was also allegedly subject to an alternate 5-level § 2G2.2(b)(3)(B) enhancement based on the value of the child pornography that he received in exchange for the child pornography that he distributed.  The district court ruled that the government had waived that argument by failing to object to the PSR's failure to recommend a § 2G2.2(b)(3)(B) enhancement.  The government has not appealed that waiver ruling.

guidelines commentary "'is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" United States v. Jordi, 418 F.3d 1212, 1216 (11th Cir. 2005) (quoting Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 1915 (1993)). When interpreting the guidelines, we apply the "traditional rules of statutory construction, including the prohibition on rewriting statutes." Shannon, 631 F.3d at 1189 (citation omitted).

III.

The sentencing enhancement at issue in this case provides: "If the offense involved . . . [d]istribution to a minor, increase by 5 levels." U.S.S.G. § 2G2.2(b)(3). "Distribution to a minor" is "the knowing distribution to an individual who is a minor at the time of the offense." Id. § 2G2.2 cmt. n.1. So the issue here is whether Dawn—the person to whom Fulford distributed child pornography—was a "minor" at the time of the offense. The commentary to § 2G2.2 defines "minor" as:

> (A) an individual who had not attained the age of 18 years; (B) an individual whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years.

Id.  The plain language of that commentary sets out three ways Dawn could be considered a minor.  She could actually be under 18 years of age.  Or she could be a fictitious person a law enforcement officer represented to be under 18 years of age who "could be provided for the purposes of engaging in sexually explicit conduct."  Or she could be an undercover law enforcement officer who represented herself (or himself) to be under 18 years of age.   Those are the only three ways that the commentary provides that Dawn could be a minor for purposes of the 2G2.2(b)(3)(C) enhancement.

Because the commentary's definition of minor is not contrary to the plain meaning of the text of the enhancement provision, we are bound to follow it.  See United States v. Wilks, 464 F.3d 1240, 1245 (11th Cir. 2006) ("When it comes to the interpretation of the guidelines, Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." (quotation marks omitted)).

Reading into the definition of minor a fourth category—anyone the defendant believes is under the age of 18—would expand the guidelines provision to cover additional conduct.   Doing so would run contrary to the canon of statutory interpretation that the specific inclusion of one meaning in a definition excludes other meanings that are not included.  See Burgess v. United States, 553

8

U.S. 124, 130, 128 S.Ct. 1572, 1577 (2008) ("As a rule, a definition which declares what a term means excludes any meaning that is not stated." (quotation marks and alterations omitted)); Lanier v. U.S. Att'y Gen., 631 F.3d 1363, 1366 (11th Cir. 2011) (same). The same rationale that stops this Court from adding to a list of statutory remedies, see, e.g., Christ v. Beneficial Corp., 547 F.3d 1292, 1298 (11th Cir. 2008), or adding to a list of exceptions to a general grant of power, see, e.g., Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1255–56 (11th Cir. 2003), also stops us from adding to a list of meanings contained in a definition. Cf. Young v. United States, 936 F.2d 533, 538 (11th Cir. 1991) ("This interpretation would effectively rewrite section 4B1.2(2). If the Sentencing Commission had intended sentence enhancement for such a broad range of prior crimes they would not have specifically listed the offenses that could be used . . . .").

Even if expanding the guidelines definition to cover the facts of this case would be an improvement, it is not our function to modify, amend, or improve statutes or guidelines. See Pavelic & LeFlore v. Marvel Entm't Grp., 493 U.S. 120, 126, 110 S.Ct. 456, 460 (1989) ("Our task is to apply the text, not to improve upon it."); Nguyen v. United States, 556 F.3d 1244, 1256 (11th Cir. 2009) ("We are not authorized to rewrite, revise, modify, or amend" the sentencing guidelines in the

guise of interpreting" them.);  see also Shannon, 631 F.3d at 1189 ("[I]nterpretation

of the Sentencing Guidelines is governed by traditional rules of statutory

construction, including the prohibition on rewriting statutes . . . ." (citation

omitted)).

IV.

However, the government contends that we should follow the district court's

lead and extend the rationale of some of our decisions interpreting other guidelines

provisions in order to construe § 2G2.2(b)(3)(C) to include anyone the defendant

believes is a minor.  The decisions the government points to are United States v.

Root, 296 F.3d 1222, 1232–34 (11th Cir. 2002) (interpreting § 2A3.2 (2000)),

superseded by Amend. 732, U.S.S.G. Supp. to App'x C (2009) as recognized in

United States v. Jerchower, 631 F.3d 1181, 1186–87 (11th Cir. 2011); United

States v. Murrell, 368 F.3d 1283, 1288–89 (11th Cir. 2004) (interpreting § 2G1.1),

and United States v. Lebovitz, 401 F.3d 1263, 1267–70 (11th Cir. 2005)

(interpreting § 2A3.1).

Because none of those three decisions involved the question of how minor is

defined for purposes of § 2G2.2(b)(3)(C), none of their holdings bind us in this

case.  See, e.g., Edwards v. Prime, Inc., 602 F.3d 1276, 1298 (11th Cir.  2010)

(explaining that language in an opinion that goes beyond the facts and specific

10

questions presented in that case is not itself binding precedent); Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1031 (11th Cir. 2003) ("The prior panel precedent rule obligates us to follow the holdings of an earlier decision, but the holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision." (citations, quotation marks, and alterations omitted)); Dantzler v. I.R.S., 183 F.3d 1247, 1251 (11th Cir. 1999) ("[T]here is a big difference between following a precedent where the prior-precedent rule demands it and extending a precedent."). Nor are we persuaded to take any rationales from Root, Murrell, or Lebovitz and extend, expand, or extrapolate them to fit these facts and answer the specific question they present.

In Root the defendant was convicted of attempting to persuade a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b), and traveling in interstate commerce for the purpose of engaging in a criminal sexual act with a minor, in violation of 18 U.S.C. § 2423(b). See 296 F.3d at 1223, 1226–27. His intended victim was actually an undercover law enforcement officer. Id. at 1223. On appeal Root challenged the enhancement he received under § 2A3.2(b)(2)(B) (2000), which applied where the defendant "unduly influenced the victim to engage in prohibited sexual conduct." Id. at 1232. His argument was that

11

the police officer posing as a minor was not, and could not have been, unduly influenced to engage prohibited sexual conduct. Id. at 1233. The government conceded that the officer was not actually unduly influenced but argued that the enhancement applied anyway. Id. We gave three reasons for our conclusion that the enhancement did apply. Id. at 1232–34.

First, we pointed out that § 2A3.2 stated that where the defendant was more than ten years older than the minor victim undue influence was to be rebuttably presumed. Id. at 1233 (citing U.S.S.G. § 2A3.2 cmt. n.5 (2000)). That reason has no force at all in the present case because no similar presumption is provided for § 2G2.2(b)(3)(C). Second, in Root we relied on the clear intent of the guidelines to cover sting operations involving officers posing as minors. See id. at 1234. That reason does not have much persuasive force because it simply does not follow from the fact that the guidelines cover sting operations involving officers posing as minors that every enhancement in that part of the guidelines applies to every crime involving an undercover officer (or anyone else) posing as a minor. Third, we reasoned in Root that "if an undercover agent is allowed to be the sole victim of a crime for which an enhancement under § 2A3.2 may be given, it would be illogical to interpret § 2A3.2(b)(2)(B) to require that agent's will actually be overborne." Id. That reason is unpersuasive because it either assumes as its premise the

conclusion—that the specific enhancement in question applies when an undercover police officer is posing as a victim—or it makes the equally unsupported assumption that every potential enhancement in § 2A3.2 applies in every case in which a law enforcement officer is posing as a victim.

The Sixth and Seventh Circuits disagreed with our decision in Root, creating a circuit split. See United States v. Chriswell, 401 F.3d 459, 469 (6th Cir. 2005); United States v. Mitchell, 353 F.3d 552, 559, 561 (7th Cir. 2003). In order to heal that split the Sentencing Commission adopted Amendment 732. See U.S.S.G. Supp. to App'x C (2009). That amendment modified the commentary "to provide that the undue influence enhancements under those Guidelines 'do[ ] not apply in a case in which the only "minor" involved in the offense is an undercover law enforcement officer.'" Jerchower, 631 F.3d at 1186–87 (quoting Amend. 732, U.S.S.G. Supp. to App'x C). In essence the amendment uprooted our Root decision and transplanted the Sixth and Seventh Circuits' position into the guidelines, and through the guidelines, into our circuit law.

In the Murrell case the defendant was convicted of using the internet to attempt to knowingly persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). See Murrell, 368 F.3d at 1284. At sentencing the district court applied the 2-level sentencing

13

enhancement under U.S.S.G. § 2G1.1(b)(2)(B) (2003) for offenses involving a "victim" between the ages of 12 and 16.  Id. at 1288.  Murrell argued to us that the enhancement should not have been applied because there was no victim—only a fictitious 13-year-old girl made up by a law enforcement officer who pretended to be the girl's father "renting" her out for sex.  See id. at 1284, 1288.  The commentary to § 2G1.1 stated that "'victim' may include an undercover law enforcement officer."  U.S.S.G. § 2G1.1, cmt. n.1.  It did not state, however, that "victim" could include a fictitious person made up by an officer, which is what was involved in that case.  See id.

Nonetheless, we concluded in Murrell that the § 2G1.1(b)(2)(B) enhancement did apply in that situation, effectively writing into the definition of "victim" language that the Sentencing Commission had left out.  See Murrell, 368 F.3d at 1289.  The sum total of our reasoning was that because the definition the Commission did provide covered law enforcement officers posing as minors, the defendant's intent was what mattered (even if his conduct fell outside the language of the definition), and Murrell had intended to have sex with a 13-year-old girl. See id.  We did not explain why, if the Sentencing Commission had wanted to include fictitious minors made up by law enforcement officers in the definition of "victim," it did not simply say that, or say even more broadly:  "anyone, fictitious

14

or not, the defendant believes is a minor." Because of the prior precedent rule, we will continue to apply the Murrell decision to the specific issue it decided, but we are not persuaded to extend its reasoning to the present case, which involves a different guidelines provision and different issue.

Then there is the Lebovitz case, involving a defendant who was convicted of two crimes, one of which was traveling in interstate commerce for the purpose of having sex with a minor, in violation of 18 U.S.C. § 2423(b). Lebovitz, 401 F.3d at 1265. His intended victim was a fictitious 11-year-old girl created by an undercover law enforcement officer with whom he had been communicating. Id. at 1265–66. Lebovitz challenged the district court's application of the § 2A3.1(b)(2)(A) enhancement for cases in which "the victim . . . had not attained the age of twelve years." Id. at 1268. He contended that enhancement could not be applied in any case where the victim was fictitious. Id. The guideline and commentary involved in that case did not define "victim," leaving us no choice but to supply our own definition. See § 2A3.1 cmt. n.1 (no definition for "victim"). Because the text of the guideline in Lebovitz was basically the same as the text of the guideline in Murrell, we decided that defining "victim" in the same way that we had in Murrell (to include law enforcement-created fictitious victims) was appropriate. See id. at 1269.

15

There is, however, no need to supply our own definition of the key term "minor" in the present case because that term is defined in the guidelines commentary applicable to the enhancement that was applied. The definition specifically includes fictitious minors created by law enforcement in two, and only two, limited circumstances. See U.S.S.G. § 2G2.2 cmt. n.1 ((B) and (C) definitions). Because there is an explicit definition of minor that limits the types of fictitious ones that qualify, we must apply that definition instead of writing our own or importing one from another guideline. See supra Part III.

There is, as should be apparent, an important factual distinction between this case and the Root, Murrell, and Lebovitz cases. Each of those three cases involved either a law enforcement officer posing as a minor or a fictitious minor created by an officer. See Root, 296 F.3d at 1223–24; Murrell, 368 F.3d at 1284–85; Lebovitz, 401 F.3d at 1265–66. Here, however, Dawn is neither a law enforcement officer posing as a minor nor the fictitious creation of a law enforcement officer. If Dawn were either, she would fall within the explicit definition of minor provided in the commentary to § 2G2.2(b)(3). Because she is neither, she does not.

For all of these reasons, we hold that Fulford's belief that Dawn was a minor at the time he sent her the child pornography is not enough to justify application of the § 2G2.2(b)(3)(C) enhancement. The government must prove that Dawn,

16

whoever he or she is, was actually under the age of 18 years at the time.

V.

The only part of the definition of "minor" in the commentary to U.S.S.G. §

2G2.2 that does not include the involvement of a law enforcement officer is "an

individual who had not attained the age of 18 years." See § 2G2.2 cmt. n.1 (A). In

other words, where the defendant is not dealing with a law enforcement officer, the

enhancement applies only where the "minor" actually is a true, real live, sure

enough minor. The government argues that the chat logs proved by a

preponderance of the evidence that Dawn was under 18 years of age. The district

court, however, made no findings about Dawn's actual age.

Despite the government's urging, we will not substitute ourselves for the

district court as factfinder. See, e.g., Norelus v. Denny's, Inc., 628 F.3d 1270,

1293 (11th Cir. 2010) ("[A]s everyone knows, appellate courts may not make fact

findings."); Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.,

450 F.3d 1295, 1306–07 (11th Cir. 2006) ("Appellate courts must constantly have

in mind that their function is not to decide factual issues de novo." (quotation

marks and alterations omitted)); United States v. Banks, 347 F.3d 1266, 1271 (11th

Cir. 2003) ("A court of appeals is not a fact finding body."); Didie v. Howes, 988

F.2d 1097, 1104 (11th Cir. 1993) ("We, however, are not factfinders.").

17

For these reasons, we vacate Fulford's sentence and remand to the district court to make a finding regarding whether the government has proven by a preponderance of the evidence that at the time Fulford sent the child pornography Dawn was under 18 years of age. If the district court finds that the government has not carried its burden of proving that fact, about which we express no view, it should resentence Fulford without the § 2G2.2(b)(3)(C) enhancement.[3]

**VACATED AND REMANDED.**

---

[3] Because we are vacating and remanding the case on this ground, we do not reach Fulford's argument that his sentence is otherwise unreasonable.