[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10223

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEENAN SERAPHIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00088-CEH-TGW-1

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Keenan Seraphin appeals his convictions and sentences for possessing a firearm and ammunition after a felony conviction, possessing with intent to distribute a controlled substance, and possessing a firearm in furtherance of a drug trafficking crime. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 7, 2017, a police officer observed Seraphin driving his vehicle erratically and attempted to stop him. Rather than stop, Seraphin led the officer on a high-speed chase through a residential neighborhood and several stop signs. Seraphin eventually abandoned his vehicle and fled on foot while carrying a bag. He then ditched the bag by throwing it over a fence. Officers were able to apprehend Seraphin and retrieve the bag, which contained fentanyl, meth, amphetamine, and marijuana. A search of Seraphin's vehicle revealed more drugs, including heroin, fentanyl, cocaine, and cocaine base. The officers also found a Glock pistol loaded with fifteen rounds of ammunition in the car.

A grand jury indicted Seraphin for possessing a firearm and ammunition after having been convicted of a felony in violation of 18 U.S.C. section 922(g)(1) (count one); possessing with intent to distribute heroin, ecstasy, marijuana, fentanyl, cocaine, and cocaine base in violation of 21 U.S.C. section 841(a)(1) (count two); and possessing a firearm and ammunition in furtherance of a drug

trafficking crime in violation of 18 U.S.C. section 924(c) (count three).  Count one alleged that Seraphin knowingly possessed the gun, but it didn't allege he knew he was a convicted felon.

By consent, Seraphin pleaded guilty as charged to the magistrate judge.  The magistrate judge read the indictment to Seraphin and explained the elements of each offense.  When explaining count one, the magistrate judge did not state that the government would have to prove that Seraphin knew he was a convicted felon while possessing the firearm.  The magistrate judge did, however, ask at the hearing if Seraphin had "been convicted of at least some of th[e] offenses listed in [c]ount [o]ne before [he] had th[e] gun."  Seraphin confirmed he had been.  After the magistrate judge informed Seraphin of his rights to a jury trial and confirmed he had an opportunity to consult with his counsel, Seraphin said that he wanted to plead guilty.  The magistrate judge recommended that the district court accept Seraphin's guilty plea, which it did.

A probation officer prepared a presentence investigation report that recommended an advisory guideline range of 262 to 327 months' imprisonment.  The guideline range accounted for a career-offender enhancement due to Seraphin's 2010 conviction for possession of cocaine with intent to sell, manufacture, or deliver and his 2012 conviction for aggravated assault of a law enforcement officer.  Seraphin initially objected to applying the career offender enhancement, but at his sentence hearing his counsel stated there was no good faith argument against its application.  The district

court therefore found that Seraphin withdrew the objection and that he qualified as a career offender.

The district court varied downward from the guideline range and sentenced Seraphin to 200 months' imprisonment followed by five years of supervised release. The district court explained that it considered statements from Seraphin and his mother, Seraphin's personal history, the fact that Seraphin was "dealing drugs to support [his drug] habit," his counsel's arguments, and the factors in 18 U.S.C. section 3553(a) when determining Seraphin's sentence. In addition to the terms of imprisonment, the district court sentenced Seraphin to three years of supervised release as to counts one and two and five years of supervised release as to count three, served concurrently with one another. The district court ordered that Seraphin "comply with the mandatory and standard conditions adopted by the [c]ourt in the Middle District of Florida" during his supervised release, but it did not explain what those conditions were. Seraphin did not object. Following the sentence hearing, the district court entered a written judgment containing thirteen "standard conditions of supervision" Seraphin had to comply with while on supervised release.

On appeal, Seraphin's counsel filed a motion to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). We denied the motion to withdraw and identified "an issue of arguable merit: whether the district court erroneously failed to pronounce the standard conditions of supervised release at Seraphin's sentencing hearing." We therefore ordered counsel to file a merits brief

addressing that issue along with "any other issues that counsel deem[ed] appropriate for inclusion" in the brief. Seraphin's counsel then filed a brief that addressed the supervised release issue, and raised some other arguments from the *Anders* brief.

## STANDARD OF REVIEW

We review de novo the adequacy of a district court's explanation for a defendant's sentence even where the defendant didn't object to it below. *See United States v. Hamilton*, 66 F.4th 1267, 1274–75 (11th Cir. 2023). When a defendant does not object to the conditions of his supervised release, we review only for plain error. *See United States v. Carpenter*, 803 F.3d 1224, 1237 (11th Cir. 2015). Similarly, while we usually review de novo the district court's interpretation of the guidelines, *see United States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011), we only review for plain error if the defendant did not preserve his objection, *see United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019). To obtain reversal under plain error review, the defendant must show there was (1) error; (2) that was plain; (3) that affected his substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003).

## DISCUSSION

Our review proceeds in two parts. We first address the supervised release issue on which we ordered merits briefing, and then we discuss the other grounds carried over from the *Anders* brief.

*The Conditions of Supervised Release*

Seraphin argues that the district court erred when it included the thirteen "standard conditions of supervision" in his written criminal judgment after not stating them as part of the oral pronouncement of his sentence. As to the standard of review, Seraphin maintains that we should review this issue de novo because he didn't have the opportunity to object before the district court imposed these conditions. Seraphin also argues that the district court did not adequately explain its reasons for imposing the conditions.

"When the oral pronouncement of a sentence varies from the written judgment, the oral pronouncement governs." *United States v. Chavez*, 204 F.3d 1305, 1316 (11th Cir. 2000). In *United States v. Rodriguez*, we held that a district court violated a defendant's right to due process when it did not reference discretionary conditions of supervised release in its oral pronouncement of the defendant's sentence but then included them in the written judgment. *See* 75 F.4th 1231, 1246–50 (11th Cir. 2023). "[A] district court must pronounce at the defendant's sentencing hearing any discretionary conditions of supervised release," but "[a] district court may easily satisfy this requirement by referencing a written list of supervised release conditions." *Id.* at 1246. "[T]he mere existence of an administrative order recommending certain conditions of supervised release, without in-court adoption of that list by the sentencing court," does not suffice. *Id.* at 1249.

First, we disagree with Seraphin that we review this claim de novo. The district court informed Seraphin that it was imposing the "standard conditions adopted by the [c]ourt in the Middle District of Florida," which gave Seraphin the opportunity to object. He didn't, so plain error review applies.

Second, while the district court did not list the thirteen conditions Seraphin takes issue with on appeal, we see no plain error. The district court's oral pronouncement informed Seraphin that it was imposing the standard conditions adopted in the Middle District of Florida. The Middle District of Florida does not appear to have had a standing order adopting these standard conditions, but it maintains a form Judgment in a Criminal Case containing them. *See* Middle District of Florida Judgment in a Criminal Case Form AO 245B. The district court used this form when imposing Seraphin's sentence. And because the district court orally pronounced that it was imposing the form's standard conditions, this case is unlike *Rodriguez*, where the district court made no reference whatsoever to any additional discretionary conditions that it would impose. *See Rodriguez*, 75 F.4th at 1240, 1246–50.[1]

---

[1] Seraphin raises in passing that the district court imposed five mandatory conditions of supervised release not contained in its oral pronouncement. Because we held in *Rodriguez* that no due process error occurs when the district court fails to orally pronounce mandatory conditions, any such challenge would fail. *See Rodriguez*, 75 F.4th at 1247 ("We . . . cannot say that a due process violation occurs when a district court imposes a mandatory condition that it failed to pronounce at sentencing.").

Third, the district court adequately explained its reasons for imposing the conditions, an issue we review de novo. *See Hamilton*, 66 F.4th at 1274–75. When fashioning a sentence, a district court may impose any condition that is "'reasonably related' to the [section] 3553(a) factors, so long as the conditions 'involve no greater deprivation of liberty than is reasonably necessary . . . and are consistent with any pertinent policy statements issued by the Sentencing Commission.'" *United States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003) (quoting U.S.S.G. § 5D1.3(b)).

The district court must "state in open court the reasons for its imposition of [a] particular sentence." 18 U.S.C. § 3553(c). Since supervised release is a part of the defendant's sentence, the requirements of section 3553(c) apply to the imposition of supervised release. *See Hamilton*, 66 F.4th at 1275. A sentencing court must "set forth enough to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority." *Id.* (alterations adopted) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). But its explanation "may be brief," *id.*, the court "need not state on the record that it has considered each of the [section] 3553(a) factors," and "an acknowledgment by the district [court] that" it considered the section 3553(a) factors is enough, *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007). Further, section 3553(c) does not require "two separate explanations—one for the term of imprisonment and one for the term of supervised release." *Hamilton*, 66 F.4th at 1275.

The district court adequately explained the reasons for its sentence. When orally pronouncing Seraphin's sentence, the district court explained that it had considered several factors, including Seraphin's and his mother's statements, Seraphin's drug habit, his arguments, and the section 3553(a) factors. This explanation satisfied the district court's obligation under section 3553(c). *See Turner*, 474 F.3d at 1281.

### *Seraphin's Remaining Challenges*

We now address the other issues Seraphin raises.

### 1. *Rehaif* Challenges

Seraphin first raises two issues with his guilty plea and conviction as to count one, both related to *Rehaif v. United States*, 139 S. Ct. 2191 (2019). First, he briefly implies that the district court didn't have jurisdiction over count one, and his indictment failed to state an offense, because his indictment didn't allege that he knew he was a convicted felon when he possessed the firearm. Relatedly, he argues that his plea wasn't voluntary and knowing, and that the district court violated Federal Rule of Criminal Procedure 11, because he was never advised that the government had to prove he knew he was a felon at the time he committed his offense.

Rule 11 requires a district court to "assure that the defendant is informed of and understands 'the nature of each charge.'" *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018) (quoting Fed. R. Crim. P. 11(b)(1)(G)). Under *Rehaif*, section 922(g) requires that "the Government . . . prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant

category of persons barred from possessing a firearm." *United States v. McLellan*, 958 F.3d 1110, 1117 (11th Cir. 2020) (quoting *Rehaif*, 139 S. Ct. at 2200).

First, Seraphin's argument that the district court didn't have jurisdiction over count one because the indictment did not track the requirements of *Rehaif* is foreclosed by our precedent holding that this is a non-jurisdictional issue. *United States v. Dudley*, 5 F.4th 1249, 1266 (11th Cir. 2021) ("We recently held that the same *Rehaif*-based defect of which [the defendant] complains is non-jurisdictional.").

Second, when a defendant argues his guilty plea wasn't knowing and voluntary and plain error review applies, the defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 1267 (quotation omitted). Similarly, a defendant raising a *Rehaif* challenge must still show any defect affected his substantial rights. *See United States v. Moore*, 954 F.3d 1322, 1337 (11th Cir. 2020). Seraphin's challenges to his indictment and guilty plea, which we review only for plain error since he didn't raise them below, fail because the record establishes that "the probability is virtually zero" Seraphin would have in fact made a different decision had his indictment complied with *Rehaif* and he been aware of *Rehaif*'s requirements. *See Dudley*, 5 F.4th at 1267 (quotation omitted). Most significantly, Seraphin admitted under oath at his change of plea hearing that he committed "at least some of" the felonies listed in count one of the indictment. And he offers nothing on appeal that indicates that, had he not pleaded guilty, the

government wouldn't have been able to prove he knew he was a felon. *See McLellan*, 958 F.3d at 1120 (rejecting a defendant's challenge to his guilty plea because "the record reveal[ed] no basis for concluding that the government would have been unable . . . to prove that [the defendant] knew he was a felon"). Without more, Seraphin can't establish any error affected his substantial rights. *See id.*

### 2. Ineffective Assistance of Counsel

Seraphin next claims that he received ineffective assistance of counsel before pleading guilty because his trial counsel did not adequately advise him about his status as a career offender and the possible implications of *Rehaif*, which had not been decided by the time he pleaded guilty. But we generally do not consider ineffective assistance of counsel claims for the first time on appeal, *Dohrmann v. United States*, 442 F.3d 1279, 1282 (11th Cir. 2006), and will do so only where "the record is sufficiently developed," *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (quotation omitted). We therefore decline to reach the issue in the first instance in this appeal. *See United States v. Lewis*, 115 F.3d 1531, 1539 (11th Cir. 1997) ("This Court will generally not address an issue not decided by the district court." (cleaned up)).

### 3. Career Offender Challenge

Finally, Seraphin challenges the district court's finding that he was a career offender under the applicable guideline because his 2010 conviction for possession of cocaine with intent to sell, manufacture, or deliver in violation of section 893.19 of the Florida

Statutes could not serve as a valid predicate. Seraphin's argument goes like this. At the time he was convicted in 2010, Florida made it unlawful to possess ioflupane, a cocaine analogue. But Florida then decriminalized it in 2017 before he was sentenced for his current offenses and before the guidelines that were operative at the time of his sentencing were promulgated. So, Seraphin argues, his 2010 conviction can't serve as a predicate "controlled substance offense" since he was convicted under a statute that swept more broadly than the one in effect when he was sentenced for his current offenses. He also raises the fact that ioflupane stopped being federally regulated in 2015.

A defendant qualifies as a career offender when he meets three requirements: (1) he "was at least eighteen years old at the time [he] committed" his offense; (2) his offense "is a felony that is either a crime of violence or a controlled substance offense;" and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" includes "an offense under federal or state law . . . that . . . prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b).

Seraphin withdrew his initial objection to the district court on this issue, so plain error review applies. And his argument is foreclosed by recent precedent. We've adopted "a time-of-state-

conviction rule: the term 'controlled substance[]' . . . means a substance regulated by state law when the defendant was convicted of the state drug offense, even if it is no longer regulated when the defendant is sentenced for the federal firearm offense." *United States v. Dubois*, 94 F.4th 1284, 1298 (11th Cir. 2024). And we also held that state—not federal—law "defines which drugs qualify as a 'controlled substance' if the prior conviction was under state law." *Id.* at 1296 (emphasis omitted). Since Seraphin concedes ioflupane was regulated by state law at the time of his state conviction, he hasn't demonstrated the district court erred when applying the career offender enhancement.

## CONCLUSION

Seraphin has failed to demonstrate any reversible error related to his convictions or sentences. The district court's criminal judgment is therefore **AFFIRMED.**